JUDGE BUCHWALD

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**15 CV 3369**

KOREAN AMERICAN ASSOCIATION OF
GREATER NEW YORK, INC.,

          Plaintiff,

– against –

JINA AGUILAR, a/k/a "JINA JANG," and
JOHN and JANE DOES 1 through 10,

          Defendants.

Index No.

**COMPLAINT**



RECEIVED APR 29 2015 U.S.D.C. S.D.N.Y.

    Plaintiff Korean American Association of Greater New York, Inc. ("KAAGNY"), by and through its attorneys, Steptoe & Johnson LLP, for its complaint against defendants Jina Aguilar a/k/a Jina Jang ("Jang") and JOHN and JANE DOES 1 through 10 (the "DOE Defendants") (collectively, "Defendants") alleges as follows:

### NATURE OF THE ACTION

    1.    This action concerns the theft by Defendants of thousands of computer files and other electronic data belonging to Plaintiff. The files and data were downloaded and subsequently deleted from KAAGNY's office computers in the middle of the night by Jang, a former KAAGNY employee, the day before she resigned as Office Manager. Defendants also stole hard copies of KAAGNY records that contain highly personal and confidential information of KAAGNY officers and members of its Board of Directors, including bank account numbers, dates of birth, and home telephone numbers and addresses. In an effort to hide this theft and to prevent its detection, Defendants erased the building's security tapes and disabled its cameras before disappearing into the night.

2. Defendants have handed over the purloined information to various third parties and to the press in an effort to smear, discredit, and defame KAAGNY officials and to aid a disgruntled former candidate for President of KAAGNY in her lawsuit against the organization.

3. Plaintiff seeks an injunction against Defendants requiring the return of the stolen files and information, damages to compensate it for the injuries and losses caused by Defendants' actions, punitive damages, and attorneys' fees and costs.

## THE PARTIES

4. Plaintiff KAAGNY is a not-for-profit corporation organized under the laws of the State of New York, with its principal place of business located at 149 West 24th Street in the Borough of Manhattan. KAAGNY advocates for the rights and interests of more than 500,000 Korean Americans in the New York metropolitan tri-state region. As a civic organization, KAAGNY focuses on assisting Korean-American immigrants in assimilating and integrating in and around New York City. Among other things, KAAGNY coordinates and organizes community, educational and cultural activities and provides social services to Korean Americans. KAAGNY also serves as an umbrella organization for over two hundred Korean-American professional, regional, educational and religious organizations.

5. Defendant Jang was employed by KAAGNY as its Office Manager until her resignation on February 27, 2015. Upon information and belief, Jang resides at 99-32 66th Road, Apt. 9S, Rego Park, New York 11374.

6. Upon information and belief, the DOE Defendants are one or more persons residing in the tri-state metropolitan area who aided and abetted Jang in her wrongful actions and conspired with her to steal KAAGNY's files and information and smear, discredit, and defame KAAGNY officials.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, because plaintiff asserts claims under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C.A. § 1030; and the Court has supplemental jurisdiction over the state law and common law claims asserted herein pursuant to 28 U.C.S. § 1367.

8. Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(a) because a substantial part of the events occurred here, namely the theft of documents, computer files and other data from the KAAGNY offices located in this judicial district.

## BACKGROUND FACTS

9. Jang was employed as the Office Manager at KAAGNY from May 1, 2013 until her resignation on February 27, 2015. During her employment at KAAGNY, Jang had access to protected computers belonging to and maintained by KAAGNY for the exclusive use of KAAGNY staff and its President and Executive Director. Those computers were used to engage in commerce and communications with individuals and entities in other states and other countries.

10. During Jang's employment, KAAGNY employed three full-time employees and an Executive Director at its headquarters located on the sixth floor of the building located at 149 West 24th Street in Manhattan. KAAGNY is the owner of the building and leases the ground floor spaces to commercial tenants. The second through fifth floors of the building are occupied by residential tenants.

11. KAAGNY's office also provides space for the President of KAAGNY, who is elected by the members and serves in an unpaid capacity.

12.     In February 2015, KAAGNY was conducting an election for the 34th President of KAAGNY. Two persons had registered as candidates for election: Ms. Minsun Kim ("Kim") and the incumbent, President Sung K. Min ("President Min").

13.     On or about February 20, 2015, the Election Administration Committee ("EAC") of KAAGNY, whose function was to conduct and oversee the election process, disqualified Kim as a candidate for President because she violated the KAAGNY election rules prohibiting candidates from engaging in pre-election campaigning. Under the KAAGNY election rules, candidates were strictly prohibited from campaigning other than in the two-week period from February 21 – March 8, when voting was to occur.

14.     Kim and her supporters objected to her disqualification and tried to stop the election and overturn the decision of the EAC. Kim and her supporters unsuccessfully sought restraining orders from several New York Supreme Courts and complained loudly to the press.

15.     Upon information and belief, Jang and one or more of the Doe Defendants entered KAAGNY's offices after the close of office hours on the evening of February 26, 2015, and accessed KAAGNY's computer system, copied confidential and propriety KAAGNY data, deleted numerous KAAGNY computer files, and stole hard copies of various KAAGNY records, among other unlawful activities.

16.     Forensic analysis of KAAGNY's computer system indicates that Jang and the Doe Defendants accessed KAAGNY's computer system through Jang's office computer at or around 7:00 PM on February 26, 2015, inserted a USB device into that computer, and systematically opened and then deleted thousands of KAAGNY computer files and data records. This activity went on until after midnight, when the USB device was disconnected from Jang's computer.

17. Upon information and belief, Jang and the Doe Defendants copied some or all of the files she opened that night onto the USB device before deleting the files from KAAGNY's computer system.

18. Early in the morning of February 27, 2015, before KAAGNY's regular office hours, Executive Director Steven Jo ("Jo") accessed his office computer remotely from his home in New Jersey in order to update certain KAAGNY files. Jang and one or more of the Doe Defendants were present in KAAGNY's offices at that time and used a cell phone camera to record a video of Jo's computer monitor in KAAGNY's office while Jo was working in the document remotely.

19. Upon information and belief, Jang and/or the Doe Defendants provided a copy of this video file to a former KAAGNY member who subsequently distributed it to members of the press and other third parties claiming that the video was "proof" of wrongdoing at KAAGNY.

20. The video clip also captures the image of a person – who is not Jang or any other KAAGNY employee – walking past Jo's computer monitor in KAAGNY's office.

21. Later that day, February 27, 2015, Jang sent an email to President Min complaining about alleged improper activities at KAAGNY and demanding a $15,000 raise as a condition of her continuing to work for KAAGNY.

22. President Min did not respond to Jang's demand.

23. At 6:13 PM that same day, Jang tendered her resignation to KAAGNY by email. In her resignation email, Jang directed President Min to "NOT CONTACT ME IN ANY WAY" but instead to talk to her lawyer, whom she did not identify. She also accused President Min of asking her to engage in "improper and maybe illegal" conduct.

24. After Jang's resignation, Jo tried to access the office computer that had been used by Jang. Jo could not access the computer because Jang had locked it with a passcode that was

unknown to Jo or to any other employee or officer of KAAGNY. Jo texted Jang on her cell phone and asked her to provide the password, which she did.

25. Jang's computer had access to the main KAAGNY server, which stores KAAGNY's files and electronic data. Upon inspection, it was determined that numerous files had been deleted from the hard drive on the computer Jang had used. Upon further inspection, it was determined that thousands of additional records and data files also had been deleted from the KAAGNY server.

26. Moreover, it was determined that numerous paper records and documents kept in the KAAGNY office had been removed from binders and taken from KAAGNY's offices. These paper records and documents and electronic data contain, among other things, the meeting minutes of the Board of Directors; the names, addresses, bank account numbers, dates of birth and telephone numbers of more than 60 members of the Board of Directors as well as KAAGNY officers; and other confidential and proprietary information and trade secrets regarding the operation of KAAGNY.

27. KAANY maintains a CCTV security system that digitally records all persons who enter the building on the ground level, the elevator lobby on the sixth floor of the building, and the staff offices inside the sixth floor KAAGNY office space, where Jang's desk and computer were located. Jang was aware of the existence and location of the KAAGNY security system and cameras.

28. The KAAGNY security tapes were erased on or after midnight on February 26, the night before Jang tendered her resignation, and the system was left disabled, so it did not record the persons who entered KAAGNY's office after hours on February 26 or in the early morning hours of February 27.

29. After Jang's resignation, information in the KAAGNY files began to appear in press reports in Korean language newspapers as well as in public statements and claims made by Kim and others.

30. On or about March 2, 2016, Jang mailed an envelope to Chang Hun Yoo, who is the Chairman of the KAAGNY Board of Directors. The envelope contained copies of some but not all of the paper records that had been removed from KAAGNY's offices, as well as a USB device (which was not the same device used by Defendants on February 26 to download the KAAGNY files).

31. The USB device sent by Jang includes the video of Jo's computer screen in the early morning hours of February 27 that was taken by the Defendants while in KAAGNY's office before the office was open.

32. The USB device does not contain any of the deleted KAAGNY files, and forensic analysis shows that Jang appears to have tried to wipe this device clean before returning it to KAAGNY.

33. On March 8, 2015, the EAC declared President Min the winner of the 2015 KAAGNY election.

## FIRST CAUSE OF ACTION
### (COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C.A. § 1030)

34. KAAGNY re-alleges and incorporates by reference paragraphs 1 through 33 of this Complaint as if stated herein.

35. Jang knowingly and intentionally accessed protected KAAGNY computers (including the server) without authorization or in excess of her authorized access and thereby obtained from those computers information belonging to KAAGNY.

36. Jang accessed the KAAGNY computers with the intent to steal, deprive, and defraud KAAGNY of its computer data and records and to use those data and records for improper personal purposes, to the detriment of KAAGNY.

37. Jang was authorized to access her KAAGNY desktop computer and the KAAGNY server only for legitimate and proper KAAGNY purposes. She was not authorized to access the computer or server for any other purposes, and certainly not for purposes inimical and injurious to KAAGNY and its interests.

38. Jang was not authorized to access Jo's desktop computer or certain KAAGNY files on the server without prior permission from Jo or President Min.

39. Upon information and belief, Jang broke into KAAGNY's computer system and stole KAAGNY's computer data and files in order to defraud KAAGNY members and officers of control of KAAGNY and its property, contributions, and membership fees, and to embarrass and malign KAAGNY officials.

40. By means of this conduct, Jang knowingly and intentionally obtained valuable proprietary and confidential information and trade secrets from KAAGNY computers and furthered her and the Doe Defendants' intended fraudulent scheme.

41. After accessing the KAAGNY computer, Jang knowingly and intentionally and without authorization caused the transmission of a program, information, code, or command and as a result of such conduct intentionally and/or recklessly caused damage to KAAGNY computers by deleting valuable information and depriving KAAGNY of its use.

42. Upon information and belief, the Doe Defendants knowingly and intentionally aided and abetted Jang's commission of these actions, and Jang and the other Defendants agreed and conspired in the execution of this scheme and in the use of the information stolen from

KAAGNY in their campaign to harm KAAGNY and President Min and to defraud KAAGNY members and officers.

43. As a result of Jang's and the other Defendants' actions, KAAGNY was temporarily unable to access one of its computers, and it has been deprived of the use of valuable proprietary and confidential information and trade secrets that had been stored on those computers but were stolen and deleted by Jang and the Doe Defendants. That information is necessary for the operation of KAAGNY, the delivery of services to its members, the solicitation of contributions, and the collection of membership fees.

44. KAAGNY also paid for the cost of forensic analysis of its computers and equipment to determine who had accessed the computers and stole KAAGNY's information, what information they stole and deleted, how they did it, what security vulnerabilities might exist in the network, and how (if possible) to restore the use of the computers and the stolen information. The losses caused by Defendants aggregate to more than $5,000 in the months since Defendants' actions.

### SECOND CAUSE OF ACTION
### (CONVERSION)

45. KAAGNY re-alleges and incorporates by reference paragraphs 1 through 44 of this Complaint as if stated herein.

46. Through the conduct alleged above, Jang and the Doe Defendants wrongfully converted to their own use Plaintiff's files and data, both electronic and paper.

47. In so doing, Defendants knowingly and intentionally misappropriated and seriously interfered with Plaintiff's right to control its valuable property and conduct its business.

48. As a result of these actions, Plaintiff has suffered damage and loss.

### THIRD CAUSE OF ACTION
### (MISAPPROPRIATION OF CONFIDENTIAL INFORMATION AND TRADE SECRETS)

49.   KAAGNY re-alleges and incorporates by reference paragraphs 1 through 48 of this Complaint as if stated herein.

50.   KAAGNY maintains a compilation of data and other information that it uses to contact individual members and groups within the Korean-American community in the tri-state metropolitan region.  This information required KAAGNY to expend numerous hours and great expense to compile, maintain, and protect, and it cannot be easily replicated.  This information gives KAAGNY a competitive advantage over individuals and other organizations that do not know or have such information.

51.   Through the conduct described above, Jang and the Doe Defendants knowingly and intentionally misappropriated KAAGNY's proprietary and confidential information and trade secrets about KAAGNY's operations and members, which they acquired by breaching a relationship of trust (*e.g.,* Jang's employment at KAAGNY) and/or through fraud and other improper means, including, but not limited to, stealing confidential information and trade secrets from KAAGNY's computers and offices.

52.   Upon information and belief, Defendants further misappropriated KAAGNY's confidential information and trade secrets by publishing the information without KAAGNY's permission while knowing that the information had been obtained through improper means and/or in breach of a duty of confidentiality.

53.   As a result of these actions, Plaintiff has suffered damage and loss.

## FOURTH CAUSE OF ACTION
### (BREACH OF FIDUCIARY DUTY OF GOOD FAITH AND FAIR DEALING)

54. KAAGNY re-alleges and incorporates by reference paragraphs 1 through 53 of this Complaint as if stated herein.

55. By employing Jang as its Office Manager, KAAGNY reposed trust and confidence in Jang to act in KAAGNY's interests and not to engage in conduct that benefitted a third party contrary to the interests of KAAGNY, including stealing and destroying KAAGNY's property.

56. Jang, as an employee, owed KAAGNY, her employer, a duty of the utmost good faith and loyalty and fair dealing in the performance of her duties. As such, Jang was prohibited during her employment from acting contrary to KAAGNY's interests and/or in the interest of herself or a third party, such as by stealing and destroying KAAGNY's property.

57. By accessing KAAGNY's computers without authorization for an improper purpose, stealing proprietary and confidential information and trade secrets, deleting information from KAAGNY's computers, and giving the stolen information to third parties for uses injurious to KAAGNY, Jang knowingly and intentionally breached the duty of good faith and fair dealing that she, as an employee and agent of KAAGNY, owed to KAAGNY and its officers and members.

58. The Doe Defendants knowingly and intentionally aided and abetted and conspired with Jang in the commission of her actions and her breach of her fiduciary duty to KAAGNY and its officers.

59. As a result of this breach, Plaintiff has suffered damage and loss.

## FIFTH CAUSE OF ACTION
## (BREACH OF IMPLIED CONTRACT)

60. KAAGNY re-alleges and incorporates by reference paragraphs 1 through 59 of this Complaint as if stated herein.

61. Although there was no written employment contract between KAAGNY and Jang, Jang clearly acted, and was treated, as an employee of KAAGNY, performing the responsibilities of Office Manager and in exchange receiving a salary and benefits from KAAGNY.

62. Jang's resignation email acknowledged that she was an employee of KAAGNY, stating that she had no choice but to "leav[e] my job" with KAAGNY.

63. Jang received valuable consideration from KAAGNY in the form of a salary and benefits in exchange for her performance of her job duties.

64. Jang and KAAGNY thus had an implied employment contract.

65. As part of that implied contract, Jang was duty bound to act only in the interests of her employer, and certainly not in a manner injurious to her employer and its officers.

66. Jang knowingly and intentionally breached her implied contract with KAAGNY by accessing KAAGNY's computer network and information without authorization, stealing its confidential and proprietary information and trade secrets, deleting KAAGNY's information from the KAAGNY computer network, and providing KAAGNY's information to the Doe Defendants for use in their campaign to defraud KAAGNY and its membership and to defame and injure KAAGNY's officers.

67. The Doe Defendants knowingly and intentionally aided and abetted and conspired with Jang in the breach of her implied contract.

68. As a result of this breach, Plaintiff has suffered damage and loss.

## SIXTH CAUSE OF ACTION
## (TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS)

69. KAAGNY re-alleges and incorporates by reference paragraphs 1 through 68 of this Complaint as if stated herein.

70. Through the actions described above, Jang and the Doe Defendants knowingly and intentionally deprived KAAGNY and its officers of information necessary to operate KAAGNY's business, serve its members, collect contributions and membership fees, and solicit new members.

71. Jang and the Doe Defendants thereby tortuously interfered with KAAGNY's existing and prospective business relationships with its members and future members.

72. As a result of this tortious interference, Plaintiff has suffered damage and loss.

## SEVENTH CAUSE OF ACTION
## (TORTIOUS INTERFERENCE WITH IMPLIED CONTRACT)

73. KAAGNY re-alleges and incorporates by reference paragraphs 1 through 72 of this Complaint as if stated herein.

74. The Doe Defendants knew that Jang was an employee of KAAGNY and had a valid implied contract with it.

75. Nonetheless, the Doe Defendants knowingly and intentionally provided Jang with valuable consideration and other inducements to persuade her to breach her implied contract with KAAGNY, without justification, by deleting information from its computer network and by stealing information from KAAGNY and giving it to the Doe Defendants for their campaign to harm KAAGNY and its officer and to defraud its membership.

76. The Doe Defendants thereby tortuously interfered with KAAGNY's implied contract with Jang.

77. As a result of this tortious interference, KAAGNY suffered damage and loss.

## EIGHTH CAUSE OF ACTION
## (UNFAIR COMPETITION)

78. KAAGNY re-alleges and incorporates by reference paragraphs 1 through 77 of this Complaint as if stated herein.

79. By stealing KAAGNY's confidential and proprietary information and trade secrets and depriving KAAGNY of its own use of that information, the Defendants knowingly and intentionally and with bad faith misappropriated the information of KAAGNY and the labor, skill, and expenditures that went into producing that information, and used that information for their own purposes – specifically, to harm KAAGNY and its officers and defraud its members.

80. The Defendants thereby engaged in unfair competition.

81. As a result of this unfair competition, KAAGNY suffered damage and loss.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff KAAGNY demands a trial by jury of all issues triable thereby.

**REQUEST FOR RELIEF**

**WHEREFORE**, plaintiff Korean American Association of Greater New York, Inc. demands judgment:

(i)  Ordering Defendants to immediately return all KAAGNY property, including all original documents, files, and data (electronic or paper) and all electronic or paper copies thereof to KAAGNY;

(ii)  Awarding KAAGNY its actual and compensatory damages in an amount to be determined at trial;

(iii)  An order restraining Defendants from using, distributing, or disclosing any KAAGNY documents, files, data, or other information to any other person or entity or on the Internet;

(iv)  Awarding KAAGNY punitive damages in the amount of $1,000,000;

(v)  Awarding KAAGNY its legal fees and costs of this action; and

(vi)  Awarding KAAGNY such additional relief as the Court deems right and appropriate.

Dated:  New York, New York
April 30, 2015

STEPTOE & JOHNSON LLP

John D. Lovi (JL-5928)
Michael A. Vatis (MV-8369)
Raisa L. Michalek
The Grace Building
1114 Avenue of the Americas
New York, NY 10036
Tel:  (212) 506-3900
Fax:  (212) 506-3950

– and –

Hojin Seo (HS-2378)
DERYOOK & AJU LAW FIRM
154-08 Northern Blvd., Suite 2C
Flushing, NY 11354
Tel:  (718) 939-3232
Fax:  (718) 939-3266

*Counsel for Plaintiff*